Sophia C. Coll, Appellant, v. Easton Transit Company.

*Negligence—Street railways—Question for jury.*

In an action against a street railway company to recover damages for the death of plaintiff's husband who was run over by defendant's car, it appeared that at the time of the accident the car was running after dark on a declining grade on a road which passed along the top of an embankment. Between the track of the railway and the edge of the embankment was a footpath covered with cinders, and varying in width from four to six feet. At the outer edge of the path was a guard rail supported by posts. The roadbed was in an unfinished condition; the earth which had been thrown out in making an excavation for the track had not been replaced, the ties were exposed and the rails projected above the surface of the road. The deceased when last seen before the accident was on the footpath eighty or ninety feet from the car. A lineman in the employ of the defendant who had been riding with the motorman on the front platform of the car was seen by a witness to jump from the car and to

run forward in advance of it. The speed of the car was not checked until it was brought to a sudden stop. The deceased was then found behind the car, his legs having been run over by it, and the lineman had hold of him. *Held*, that as inferences of the company's negligence could be drawn from the evidence the case was for the jury.

*Evidence—Res gestæ—Declarations.*

The res gestæ may be defined as those circumstances which are the undesigned incidents of a particular litigated act and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist of speeches of any one concerned, whether participant or bystander; they may comprise things left undone as well as things done. Their sole distinguishing feature is that they should be necessary incidents of the litigated act; necessary in this sense, that they are part of the immediate preparations for or emanations of such act, and are not prompted by the calculated policy of the actors.

*Evidence—Res gestæ—Master and servant—Negligence.*

In an action against a street railway company to recover damages for the death of a man who was run over by a street car, it appeared that immediately before the accident, a lineman in the employ of the company who had been riding upon the front platform jumped off the car and ran ahead. After the car had passed he was seen to have hold of the body of the deceased, which was still on the railroad track. *Held*, that it was proper to admit in evidence as a part of the res gestæ the declarations of the lineman, made immediately after the accident and before the body of the deceased had been removed from the tracks, to the effect that he had run ahead to pull the deceased off the track, and did not have time to do it.

In an action against a street railway company to recover damages for the death of a man who was run over by a street car, it is proper to admit in evidence as part of the res gestæ a declaration of the motorman, made within two minutes of the occurrence of the accident, and while he and other employees of the company were in charge of the body, to the effect that he could have stopped the car in time, but that he supposed that a lineman, who had jumped from the car and run ahead, would have had the deceased removed from the track before the car reached him.

Argued March 10, 1897. Appeal, No. 94, Jan. T., 1897, by plaintiff, from judgment of C. P. Northampton Co., Feb. T., 1894, No. 15, refusing to take off nonsuit. Before STERRETT, C. J., GREEN, MITCHELL and FELL, JJ. Reversed.

Trespass for death of plaintiff's husband. Before SCHUYLER, P. J.

At the trial it appeared that plaintiff's husband, William Coll, was run over and killed by one of defendant's cars on the night of March 12, 1893.

The circumstances of the accident are stated in the opinion of the Supreme Court.

At the trial Henry Laubach, a witness for plaintiff, under objection and exception, testified as follows:

" Q. Now, Mr. Laubach, state what was said by either of the employees of the company when you came to the rear of the car and Coll was lying on the ground with his feet cut off? A. I cannot tell the exact words, but Dalton said about running ahead of the car and trying to pull him off and could not get him off; did not have time enough to get him off the track; he had tried to get him off the track."

The court subsequently struck this testimony out. [2]

Plaintiff offered to prove that on the night of the accident, immediately after Coll had been found upon the track on the Glendon road, the employees of the transit company, the motorman and conductor of the car which ran over plaintiff's deceased husband, took up the body of Coll as he lay upon the ground after he had been run over, and put him upon the car, and instantly started down the Glendon road a distance of a block and a half to the Lehigh Valley R. R. station, where the conductor and the motorman, with others, removed Coll from the car to the South Easton station of the L. V. R. R. This was within a few moments, not over two minutes, from the time they lifted Coll's body from the ground at the place of the accident, and at that time and place, at the South Easton station, within two minutes after the accident, while the employees of the company upon the car which ran over Coll had him in their charge and possession, they stated to a number of persons in the station that they had seen Coll lying upon the track in front of the car, and the motorman of the car stated that he could have stopped that car from the time that he had seen Coll upon the track, lying down helpless, but that he, the motorman, did not stop the car because he saw that Dalton, the lineman who had been on the car in the cab with the motorman, and who had left the cab and ran beside the car, and down in front of it, at the time when Coll was upon the track and was pulling Coll from the track, and he supposed, taking into consideration the distance to Coll from the car and the speed of the car, that Dalton would have the body of Coll pulled or removed from the track before the car reached Coll, and that the same statement

was made at that time and place aforesaid repeatedly by said motorman of said car in the presence of a large number of by-standers.

The offer was objected to as incompetent and irrelevant, and because such declarations at the time and place stated cannot be a part of the res gestæ, and are hearsay. '

By the Court: Objection is sustained. Plaintiff excepts and bill sealed. [3]

Plaintiff offered to prove by A. K. Cyphers, secretary of the borough of South Easton, ordinances and resolutions of the town council of the borough of South Easton with reference to keeping and maintaining their tracks, permission to lay track, condition in which track was to be laid in South Easton, including Glendon road, where the accident in question happened; that the company by these ordinances or resolutions were to lay their tracks and put the street back in the same condition as it was before they laid their tracks, and maintain it in that condition, and other matters of a similar nature embodying quite a number of resolutions which appear in the minutes of council.

The offer was objected to as incompetent and irrelevant, so far as it contains a distinct proposition to prove; such proof is immaterial and irrelevant under the statement of the cause of the action as contained in the statement.

By the Court: Objection sustained; bill sealed. [4]

Plaintiff further offered to prove that the Easton Transit Co., the defendant in this case, received permission from the borough of South Easton to lay its tracks on certain designated streets of said borough, one of which designated streets was Glendon road upon which the accident in question happened, and where Coll, the plaintiff's deceased husband, received the injuries from which he died; that in consequence of the said permission from the municipal authorities of the borough of South Easton, the Easton Transit Co. laid their tracks upon the said Glendon road in the borough of South Easton, and after having dug up the street and laid their ties and rails upon the street that they began to run their cars without having first filled in the ground between the ties; without having filled earth in between the rails of the track, and from the time in the fall of 1892, when said Easton Traction Co. laid their rails along said Glendon road, up until the date of the accident when Coll

received the injuries from which he died, the Easton Transit Co. never replaced the earth between the ties or between the rails, and that the whole track, ties and rails were exposed upon the night of the accident, the same as they were upon the day on which they were laid down, in the excavated portion of the street, and that dirt from the excavated portion of the street where the track was laid was thrown out into the middle of the street, and there was no footwalk on the south side of the street; the only footwalk being the cinder walk on the north side of the street, upon a portion of which cinder walk said transit company had laid their tracks as aforesaid without filling them in.

The offer was objected to as incompetent and irrelevant, except so far as it is an offer to prove the physical condition of the ground on the night of the accident.

By the Court: Objection is sustained; bill sealed. [5]

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Errors assigned* were (1) refusal to take off nonsuit; (2-5) rulings on evidence, quoting the bill of exceptions.

*William C. Shipman*, with him *Henry S. Cavanaugh*, for appellant.—The case was for the jury: Greeley v. Pass. Ry., 153 Pa. 218; Gibbons v. Ry. Co., 155 Pa. 279; Kestner v. Traction Co., 158 Pa. 422; Kraut v. Ry., 160 Pa. 327.

The presumption of the law is that the deceased exercised proper care: Schum v. R. R., 107 Pa. 8; Scranton v. Dean, 2 W. N. C. 467; Allen v. Willard, 57 Pa. 374.

The declarations of Dalton should have been admitted: Brunner v. Am. Tel. & Telephone Co., 160 Pa. 300. Declarations of co-trespassers during the execution of the trespass are admissible as part of the res gestæ: Nudd v. Burrows, 91 U. S. 438; McCabe v. Burns, 66 Pa. 356; Brown v. Parkinson, 56 Pa. 336; Scott v. Baker, 37 Pa. 330; Kelsey v. Murphy, 26 Pa. 78; Baylis v. Omnibus Co., 173 Pa. 378; Abbott's Trial Evidence, 589; 21 Am. & Eng. Ency. of Law, 108; Schnur v. Traction Co., 153 Pa. 29; Walter v. Gernant, 13 Pa. 515; Norwich Transportation Co. v. Flint, 80 U. S. 3. The declarations of the motorman should have been admitted: Com. v. Werntz, 161 Pa. 591; Shafer v. Lacock, 168 Pa. 497; Ins. Co. v. Mosley, 75 U. S. 397.

The ordinances should have been admitted: McNerney v. City of Reading, 150 Pa. 611; Phila. & Reading R. R. v. Ervin, 89 Pa. 71; Connor v. Traction Co., 173 Pa. 602; R. R. Co. v. James, 1 W. N. C. 68; Yoders v. Twp., 172 Pa. 447.

*Russell C. Stewart* and *W. S. Kirkpatrick*, with them *M. Kirkpatrick*, for appellee.—The case was properly withdrawn from the jury: Gibbons v. Wilkes-Barre, etc., St. Ry., 155 Pa. 279; Kestner v. Traction Co., 158 Pa. 422; Kraut v. Ry., 160 Pa. 327.

Whether a given state of facts admitted or proved constitutes negligence is generally a question of law to be declared by the court: Phila., Wil. & B. R. R. v. Stinger, 78 Pa. 225; Gerety v. R. R., 81 Pa. 274. When facts are not shown from which negligence may reasonably be inferred, the case should not be submitted to the jury: Phila. & R. R. v. Yeager, 73 Pa. 125; Phila. & R. R. v. Heil, 5 W. N. C. 91; Ballard v. N. Y., etc., R. R., 126 Pa. 141; Chilton v. Central Traction Co., 152 Pa. 426; Flanagan v. People's Pass. Ry., 163 Pa. 103; Fleishman v. Neversink Mt. R. R., 174 Pa. 510; Funk v. Electric Traction Co., 175 Pa. 564; Reilley v. Traction Co., 176 Pa. 337; Yingst v. Lebanon, etc., St. Ry., 167 Pa. 438; Phila., W. & B. R. R. v. Stinger, 78 Pa. 219; Phila. Traction Co. v. Bernheimer, 125 Pa. 615; Steiner v. Phila. Traction Co., 134 Pa. 200; Gillis v. Penna. R. R., 59 Pa. 129; B. & O. R. R. v. Schwindling, 101 Pa. 258; R. R. v. Bell, 122 Pa. 58.

Plaintiff was guilty of contributory negligence: Winter v. Federal St., etc., Ry., 153 Pa. 26; Gilmore v. Federal St., etc., Ry., 153 Pa. 31.

Except at crossings one who steps on a railroad track does so at his own peril: Mulherrin v. D., L. & W. R. R., 81 Pa. 366; P., F. W. & C. Ry. v. Collins, 87 Pa. 405; R. R. v. Norton, 24 Pa. 465.

One who is struck by a moving train, which was plainly visible from the point he occupied, when it became his duty to stop, look and listen, must be conclusively presumed to have disregarded that rule of law of common prudence and to have gone negligently into an obvious danger. This rule applies to street railroads operated by electricity or by cable: Buzby v. Phila. Traction Co., 126 Pa. 559; Myers v. B. & O., 150 Pa. 386;

Gangawer v. Phila. & R. Ry. Co., 168 Pa. 266; Omslaer v. Pittsburg & Birmingham Traction Co., 168 Pa. 519; Holden v. Penna. R. Co., 169 Pa. 1.

The doctrine that a man in a position of danger is not responsible for the result of an error of judgment committed in his attempt to get out of it is to be taken with the essential qualification that he must have gotten into the danger without negligence or fault of his own: Myers v. B. & O. R. R., 150 Pa. 386; Gangawer v. Phila. & R. R. R., 168 Pa. 266; Omslaer v. Pittsburg & Birmingham Traction Co., 168 Pa. 519.

When parties have removed from the scene of the accident, their declarations are mere narration of past impressions: Com. v. Werntz, 161 Pa. 596; Shafer v. Lacock, 168 Pa. 497; Vicksburg & M. R. R. v. O'Brien, 119 U. S. 99; Hanover Water Co. v. Ashland Iron Co., 84 Pa. 279.

The narrative of an agent of a past occurrence is not evidence against his principal: Bigley v. Williams, 80 Pa. 107; Fawcett v. Bigley, 59 Pa. 411; Huntingdon & Broad Top R. R. v. Decker, 82 Pa. 119; Erie & W. V. R. R Co. v. Smith, 125 Pa. 259; Penna. R. Co. v. Lyons, 129 Pa. 121.

OPINION BY MR. JUSTICE FELL, April 12, 1897:

It appeared from the testimony presented by the plaintiff that at the time of the accident the defendant's car was running after dark on a declining grade on a road which passed along the top of an embankment. Between the tracks of the railway and the edge of the embankment was a footpath covered with cinders and varying in width from four to six feet. At the outer edge of the path was a guard rail supported by posts. The roadbed was in an unfinished condition. The earth which had been thrown out in making an excavation for the track had not been replaced, the ties were exposed and the rails projected above the surface of the road. The plaintiff's husband, when last seen before the accident by the witness called at the trial, was on the footpath eighty or ninety feet from the car. Dalton, a lineman in the employ of the defendant company, who had been riding with the motorman on the front platform of the car, was seen by the witness to jump from the car and to run forward in advance of it. The speed of the car was not checked until it was brought to a sudden stop. The person

injured was then found behind the car, his legs having been run over by it, and Dalton had hold of him.

From these facts it may be inferred that the deceased, finding himself in a position of danger on the narrow path, and fearing that he would be crushed between the projecting side of the car and the guard rail, attempted to reach a place of safety by crossing the road, and in so doing he tripped and fell across the track, and that Dalton saw him fall and ran to assist him. There is no other explanation of Dalton's conduct in jumping from the car and running ahead in connection with the fact that he had hold of the man immediately after his legs were crushed. If Dalton saw the man when he fell, the motorman who was standing on the same platform and whose duty it was to look ahead saw him or should have seen him when he was eighty feet away, and he should have attempted to stop the car at once. The car was running only half as fast as Dalton ran, and its speed was not checked until it had run eighty feet. Whether these inferences could properly be drawn was a question for the jury. The judge could not say as matter of law that they were without foundation on the facts testified to, and it was error to enter a nonsuit.

As the case goes back for trial it is important that the remaining assignments should be considered. A witness had testified that immediately after the accident and before the man injured had been lifted from the tracks, Dalton, the lineman, said that he had run ahead to pull him off the track and did not have time to do it. This testimony on motion was struck out; and an offer to prove that the motorman within two minutes of the occurrence of the accident, and while he and other employees of the company were in charge of the body of the injured person, had said that he could have stopped the car in time, but that he supposed that Dalton would have had the man removed from the track before the car reached him, was rejected. The testimony relating to Dalton's statement appears to have been struck out for the reason that he was not employed in the operation of running the cars, and that relating to the statement of the motorman to have been rejected for the reason that it was too remote from the occurrence to be admissible as part of the res gestæ. Neither ground was well taken. To make his declaration admissible as part of the res gestæ it was not necessary that Dalton should

have been in the employ of the company for the purpose of running its cars, or for any purpose. His acts were a part of the occurrence, and they could have been proved if done by an entire stranger. His declarations made at the time explained the nature of his acts and the acts of others which together made up the whole occurrence under investigation. The declaration of the motorman, of which proof was offered, was separated in time two minutes only from the infliction of the injuries. It emanated from the act, it was unconsciously associated with and stood in immediate causal relation to it. The occurrence had not yet ended. He was not speaking as the narrator of a past event, but as a participant in an uncompleted one. Both of these declarations clearly come within the comprehensive definition given in Wharton on Evidence, sec. 259 (2d ed.) : " The res gestæ may therefore be defined as those circumstances which are the undesigned incidents of a particular litigated act and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist of speeches of any one concerned, whether participant or bystander : they may comprise things left undone as well as things done. Their sole distinguishing feature is that they should be necessary incidents of the litigated act; necessary in this sense, that they are part of the immediate preparations for or emanations of such act, and are not promoted by the calculated policy of the actors."

As the plaintiff was allowed to show the actual physical condition of the road at the time of the accident she was not injured by the exclusion of the testimony referred to in the fourth and fifth assignments, and as the pleadings stood at the time of the trial it is doubtful whether the testimony was admissible. The first, second and third assignments are sustained, and the judgment is reversed with a procedendo.