# KEHAN v. WASHINGTON RAILWAY & ELECTRIC COMPANY.

---

STREET RAILWAYS; NEGLIGENCE; BURDEN OF PROOF; RES GESTÆ.

1. In an action against a street railway company for personal injuries, the burden of proof of negligence on the part of the defendant as to the cause of the injury is upon the plaintiff; but this burden is changed, in case of a passenger, when it has been shown that the accident which caused the injury occurred while the latter was a passenger, and the burden of proof is then cast upon the defendant to explain the cause of the accident, and to show that the plaintiff was negligent, and that his negligence caused, or contributed to the happening of, the injury. (Following *Washington, A. & Mt. V. R. Co. v. Chapman,* 26 App. D. C. 472.)

2. In an action against a street railway company for personal injuries

received from falling from a street car, where there is a conflict of evidence as to whether or not the car had stopped, a statement of the plaintiff's brother, a passenger on the car, made a few moments after the accident, as to the fact of such stopping of the car, is not admissible as part of the *res gestœ*. (Following *Metropolitan R. Co.* v. *Collins*, 1 App. D. C. .383, 390; Distinguishing *Washington & G. R. Co.* v. *McLane*, 11 App. D. C. 220.)

3. Whether a question is leading is for the determination of the trial court.

No. 1651.   Submitted April 12, 1906.   Decided June 13, 1906.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia in an action to recover damages for personal injuries.            *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal to recover damages for personal injuries to the plaintiff, caused by the alleged negligence of the defendant, the Washington Railway & Electric Company, while the plaintiff, Katherine Kehan, a passenger, was alighting from a street car of the defendant at the intersection of Ninth street and "F" street northwest, in the city of Washington.   The injuries complained of were external bruises and internal injuries.   The declaration alleges that, while proceeding in the defendant's car in a southerly direction on Ninth street, the defendant stopped its car for the purpose of allowing passengers to alight therefrom at the intersection of the streets just mentioned, and that, when the car had come to a full stop, and while the plaintiff was in the act of alighting therefrom, but before she had an opportunity to reach the ground in safety, the said car was, by the negligence of the agents and employees of the defendant in charge thereof, suddenly started forward, and, by reason of such negligence, the plaintiff was thrown violently to the ground, and was severely injured as described in the declaration.   The defendant pleaded not guilty, and the verdict and judgment were for the defendant, and the plaintiff has appealed.

The plaintiff sat on the east side of the aisle in the middle of the car, and next to the aisle, and her brother sat on the out-

side of the same seat. When the car came to a full stop, she said her brother started to get off. She crossed the aisle of the car, and, as she put her foot on the running board, the car gave a sudden jerk forward and threw her to the ground. Her brother and a fellow passenger, Farley, picked her up. After they had picked her up and she had regained consciousness, the conductor presented a paper and asked her to sign it. This she refused to do. When the conductor asked her whom she blamed for the accident, she replied it was his fault. He did not give her time to get off. She heard no bells or signals. The plaintiff and two physicians testified concerning the serious injuries she sustained. Farley, her fellow passenger on the same car, fully corroborated the plaintiff's testimony. The motorman, Gates, testified that his attention was attracted to the accident just after the plaintiff fell; that the car had just come to a full stop, and it had not stopped before the accident. When he looked back he saw the policeman and the conductor, the latter with a paper in his hands getting names. The motorman stayed there a couple of minutes before he looked back. The conductor, Jenkins, confirmed the motorman's testimony, and further testified to things said, to which Gawler also testified. Gawler, the police officer, said that he saw the plaintiff standing on the running board of the moving car, and that before it stopped she stepped off backward and fell. Jenkins had testified that while the plaintiff was being picked up he heard her brother say, "Are you hurt? Why did you get off the car before it stopped?"—and Gawler said he heard her brother say, "Why didn't you wait until the car stopped? Why did you want to step off the car before it stopped?"—and she replied, "I thought it had stopped." These statements of Jenkins and Gawler were admitted over the objections of plaintiff's counsel. The remaining testimony tended to contradict the witnesses on either side before mentioned.

*Mr. R. F. Downing, Mr. G. A. Berry,* and *Mr. J. V. Coughlan* for the appellant.

*Mr. Charles A. Douglass, Mr. George P. Hoover,* and *Mr. E. B. Sherrill* for the appellee.

Mr. Justice McCOMAS delivered the opinion of the Court:

Four assignments of error relate to the instructions granted and to a part of the oral charge of the court concerning the burden of proof in this case. In *City & Suburban R. Co.* v. *Svedborg,* 20 App. D. C. 549, this court said: "The plaintiff was a passenger on the defendant's car, and, as such, was entitled to the highest degree of care and caution on the part of the carrier for her protection against injury. It is true, to make out a prima facie case, the burden of proof of negligence on the part of the defendant, as to the cause of the injury, was upon the plaintiff; but this burden is changed in the case of a passenger by showing that the accident occurred that caused the injury to the plaintiff while the latter was a passenger. The burden of proof is then cast upon the defendant to explain the cause of the accident, and to show, if that be the defense, that the plaintiff was negligent, and that her negligence caused or contributed to the production of the injury. *Inland & Seaboard Coasting Co.* v. *Tolson,* 139 U. S. 557, 35 L. ed. 272, 11 Sup. Ct. Rep. 653. The happening of an accident to a passenger while on or getting off a vehicle, under the control of the carrier, and which in the usual and ordinary course of things would not happen with proper care, casts the burden upon the defendant of explaining the circumstances of the accident so as to relieve itself from liability. This burden upon the defendant is sufficiently discharged, however, by showing that the injury complained of was caused by the plaintiff's own negligence or want of care. *Dougherty* v. *Missouri R. Co.* 81 Mo. 325, 51 Am. Rep. 239; *Murphy* v. *St. Louis, I. M. & S. R. Co.* 43 Mo. App. 342; *Murphy* v. *Coney Island & B. R. Co.* 36 Hun, 199; *Consolidated Traction Co.* v. *Thalheimer,* 59 N. J. L. 474, 37 Atl. 132. There are many other cases to the same effect."

The testimony in the case cited, and in the case we are here considering, shows the two cases are in the same class. The plaintiff and Farley testified that when the car came to a full

stop the plaintiff's brother started to get off, and she crossed the aisle of the car, and, as she put her foot on the running board, the car gave a sudden jerk forward and threw her to the ground. The motorman and the conductor both testified that the car had not stopped before the accident occurred, and Gawler testified that he saw the plaintiff standing on the running board of the moving car, and that before it stopped she stepped off backward and fell. In order to recover in such a case the plaintiff must show negligence in the defendant. If the plaintiff be a passenger this is done prima facie when the plaintiff shows that the accident occurred. When the plaintiff proves the occurrence of the accident, the defendant must answer that case, from all the circumstances of exculpation disclosed by the evidence, and the jury must determine whether the relation of cause and effect exists between the accident and the exonerating circumstances. In the case last cited, this court also said: "These questions of the burden of proof, and the presumptions resulting therefrom, have been very fully and clearly considered by the Supreme Court of the United States in several cases, the last of which being the case of *Gleeson* v. *Virginia Midland R. Co.* 140 U. S. 435, 35 L. ed. 458, 11 Sup. Ct. Rep. 859;—a case taken up from this District. That was a case where the plaintiff occupied the position of a passenger, and was injured by reason of an obstruction on the road, caused by a landslide, and the defense was that the cause of injury was the act of God, and not that of the defendant. But the defense did not prevail. In the opinion of the court, delivered by Mr. Justice Lamar, it is said: 'Since the decisions in *Stokes* v. *Saltonstall,* 13 Pet. 181, 10 L. ed. 115, and *New Jersey R. & Transp. Co.* v. *Pollard,* 22 Wall. 341, 22 L. ed. 877, it has been settled law in this court that the happening of an injurious accident is, in passenger cases, prima facie evidence of negligence on the part of the carrier, and that (the passenger being himself in the exercise of due care) the burden then rests upon the carrier to show that its whole duty was performed, and that the injury was unavoidable by human foresight. The rule announced in those cases has received general acceptance, and was followed at the present term in *Inland & Seaboard Coasting Co.* v. *Tolson.* 139

U. S. 551, 35 L. ed. 270, 11 Sup. Ct. Rep. 653.' " *City & Suburban R. Co.* v. *Svedborg,* 20 App. D. C. 550.

The rule of law announced in the case last cited was repeated recently in the case of *Washington, A. & Mt. V. R. Co.* v. *Chapman,* 26 App. D. C. 472.

The first prayer granted by the court in behalf of the defendant departed from this rule, for that prayer said that, "In order for the plaintiff to be entitled to a verdict in this case, the jury must be satisfied, on consideration of all the evidence and by the preponderance of the evidence, that the car fully stopped at the corner at Ninth and F streets for passengers to alight, and that, while plaintiff was in the act of alighting, the car was started forward and threw her to the ground, whereby she was injured, and, unless these facts are established by preponderance of the evidence, the verdict should be for the defendant."

It is not necessary to discuss the third prayer, nor the oral instruction of the learned court below. It is sufficient to say that the court's charge did not properly explain the burden of proof in this case to the jury. The jury were not accurately instructed that the plaintiff was a passenger on the defendant's car, entitled to the highest degree of care and caution on the part of the carrier, that to make out a prima facie case the burden of proof of negligence on the part of the defendant as the cause of the injury was upon the plaintiff, that this burden is changed in the case of a passenger when it has been shown that the accident which caused the injury occurred while the latter was a passenger, and that the burden of proof is then cast upon the defendant to explain the cause of the accident, and to show, as the defense sought to show in this case, that the plaintiff was negligent in alighting from the car, and that her negligence caused or contributed to the happening of the injury of which she complained. The judgment of the court must therefore be reversed.

Another assignment of error relates to a question we should consider, since it may arise upon the next trial of this case. There being a difference of opinion among the members of the

court as to its disposition, the writer expresses only his own opinion regarding it. The plaintiff, upon cross-examination, had been asked if her brother, just about the time he was picking her up from the ground, did not ask her, "Why did you step off before the car stopped?" She replied, "He did not;" and again she was asked if she had not then answered, "The car had started again," whereupon her brother replied, "No, it had not." The plaintiff emphatically denied these things, but admitted that her brother said, "If you had only waited a little longer." All this occurred without objection from the plaintiff's counsel. Later, Jenkins, the conductor, testified that, immediately upon seeing plaintiff fall, he went to her as she was rising to her feet by the assistance of Farley, and then Jenkins heard her brother say, "Are you hurt? Why did you get off before the car stopped?" And the plaintiff replied, "I didn't. The car stopped and started." Her brother responded, "No, the car had not stopped." And she replied: "Well, I thought the car had stopped." Gawler substantially agreed with Jenkins about this brief conversation, and in the case of each witness the plaintiff's counsel objected, and, when the court admitted this testimony, excepted to its admission.

First Wharton on Evidence, section 259, says, substantially, that the *res gestæ* are those circumstances which are the undesigned incidents of a particular act, and which are admissible when illustrating such act, although separated from the act by a lapse of time more or less appreciable. They may be sayings and doings of one absorbed in the event, whether participant or bystander; but they must be necessary incidents of the litigated act in the sense that they are emanations of such act, and not produced by the calculated policy of the actors. Such are admissible though hearsay; "it is the act that creates the hearsay, not the hearsay the act;" and Mr. Wharton says: "Exclamations of bystanders, if instinctive, are in like manner admissible."

A case in Pennsylvania appears very like that we are here considering. "A witness had testified that, immediately after the accident and before the man injured had been lifted from the tracks, Dalton, the lineman, said that he had run ahead to

pull him off the track, and did not have time to do it. This testimony, on motion, was struck out; and an offer to prove that the motorman, within two minutes of the occurrence of the accident, and while he and other employees of the company were in charge of the    *    *    *    injured person, had said that he could have stopped the car in time, but that he supposed that Dalton would have had the man removed from the track before the car reached him, was rejected. The testimony relating to Dalton's statement appears to have been struck out for the reason that he was not employed in the operation of running the cars, and that relating to the statement of the motorman to have been rejected for the reason that it was too remote from the occurrence to be admissible as part of the *res gestæ*. Neither ground was well taken. To make his declaration admissible as part of the *res gestæ* it was not necessary that Dalton should have been in the employ of the company for the purpose of running its cars, or for any purpose. His acts were a part of the occurrence, and they could have been proved if done by an entire stranger. His declarations made at the time explained the nature of his acts and the acts of others, which, together, made up the whole occurrence under investigation. The declaration of the motorman, of which proof was offered, was separated in time two minutes only from the infliction of the injuries. It emanated from the act; it was unconsciously associated with and stood in immediate causal relation to it. The occurrence had not yet ended. He was not speaking as the narrator of a past event, but as a participant in an uncompleted one. Both of these declarations clearly come within the comprehensive definition given in Wharton on Evidence, 2d ed. sec. 259. 'The *res gestæ* may therefore be defined as those circumstances which are the undesigned incidents of a particular litigated act, and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist of speeches of anyone concerned, whether participant or bystander; they may comprise things left undone as well as things done. Their sole distinguishing feature is that they should be necessary incidents of the litigated act; necessary in this sense, that they are

part of the immediate preparations for, or emanations of, such act, and are not promoted by the calculated policy of the actors.' " *Coll* v. *Easton Transit Co.* 180 Pa. 625, 37 Atl. 89.

Mr. Wigmore in his recent work on evidence, in discussing the admission of "spontaneous exclamations" (*res gestæ*), says the utterance must have been *before there has been time to contrive and misrepresent;* that the statements *need not be strictly contemporaneous* with the exciting cause; that there can be *no definite and fixed limit of time;* that the utterance *must relate to the circumstances of the occurrence preceding* it; that the declarant must appear to have had an opportunity to observe personally the matter of which he speaks. He concludes that anyone possessing such qualifications would be a competent speaker. In particular, a bystander's declarations would be admissible. In a few courts the declarations of a mere bystander have been excluded, but in the greater number no such discrimination is made. 3 Wigmore, Ev. secs. 1750–1755.

Whether the plaintiff's brother be regarded as a non-actor, or a bystander, the brief and excited exclamations in this case are surely within Mr. Wigmore's rules.

It is apparent that these declarations cannot be excluded without overruling the statement of the doctrine of *res gestæ,* so clearly stated by Chief Justice Alvey, speaking for this court, in *McLane's Case.*

In *Washington & G. R. Co.* v. *McLane,* 11 App. D. C. 222, 223, such a conversation between an injured child and his mother, five or ten minutes after his serious injury, were admitted. In that case objection was only made to the declarations of the injured boy, who soon after died. This court said: "It is certainly true that it is not always easy to determine when declarations having relation to an act done, and professing to explain or account for such act, are admissible as part of the *res gestæ.* There is great contrariety in the decisions upon the subject; but the tendency of recent decisions is to extend and liberalize the principle of admission, and declarations and statements are now, by many recent decisions of high authority, admissible, that would formerly have been excluded. The application of the principle of admission is largely dependent

upon the special circumstances of each case as it occurs.  In the English decisions, where the principle has been applied with the greatest strictness, it was held by Lord Holt, in the case of *Thompson* v. *Trevanion,* Skinner, 402, and since repeated and approved in the case of *Rex* v. *Foster,* 6 Car. & P. 325, that a statement made by a party injured immediately after he was knocked down, as to how the accident happened, was admissible. The declarations, however, to be admissible, must be the natural emanations or promptings of the act or occurrence in question, and, although not exactly concurrent in point of time, yet, if they were voluntarily and spontaneously made, and so nearly contemporaneous as to be in the presence of the transaction which they illustrate and explain, and were made under such circumstances as reasonably to exclude the idea of design or deliberation, such declarations are admissible as part of the *res gestœ.*"

In the present case the plaintiff and her brother, who has since died, were fellow passengers on the car.  They both were alighting from it about the same time.  The brother and Farley helped the plaintiff to arise after she had fallen, and immediately thereafter it is testified that this brief interchange of words between the plaintiff and her brother was heard by Jenkins and Gawler.  Her brother may well be considered an actor in this transaction and we think that the testimony is admissible.

*Metropolitan R. Co.* v. *Collins,* 1 App. D. C. 389, differs from this case.  There the declaration held not admissible as part of the *res gestœ* was a statement of a transfer agent who was not an actor in the occurrence, who was a looker on and had nothing to do with it, and whose statement was a narrative only of a past transaction.  This court said of the declaration in that case:  "It was not a spontaneous outburst incident to the occurrence or illustrative of any part of it."

We need not consider the remaining exception, which relates to a leading question permitted by the court.  This matter was within the discretion of the trial court,—discretion which should always be carefully exercised, but which we will not review upon this appeal.

The judgment in this case must be reversed, with costs, and

the cause remanded to the court below, for further proceedings not inconsistent with this opinion, and it is so ordered.

*Reversed.*

Mr. Chief Justice Shepard and Mr. Justice Duell filed the following opinion:

We concur in reversing the judgment in this case for error in the charge of the court, because of its failure to define with necessary particularity the duties and obligations of a common carrier to its passengers. We do not concur in the opinion that the declarations of the plaintiff's brother, made immediately after the accident, were admissible as part of the *res gestæ.* He was no more a party to the actual occurrence than were other passengers on the same car, and the fact that he happened to be the brother of the plaintiff does not differentiate him from other passengers. His declaration was not an involuntary exclamation made during the occurrence. It was an expression of opinion relating to a past occurrence, and not, therefore, what is called part of the *res gestæ,* although made within a few moments thereafter.

We think it falls within the principle controlling the case of *Metropolitan R. Co.* v. *Collins,* 1 App. D. C. 383, 390. The judgment in that case was reversed because the plaintiff was permitted to introduce the declaration of the transfer agent or car starter, who stood nearby in performance of his duty, and immediately after the accident made the declaration that the conductor had started the car prematurely and without his authority.

Referring thereto, the court said: "The transfer agent, as to this transaction, occupied to the defendant the relation of any other bystander. Declarations of bystanders, though made amid all the excitement of the moment, have not been held competent in any case similar to this that has come under our observation. It has no element in common with those cases, where, as in riots, unlawful assemblies, and conspiracies for such purposes, the cries of the mob or crowd have been held competent as illustrating the motives and explaining the probable purposes of

their leaders and inciters, as in *Lord George Gordon's Case,* and perhaps others."

We are not prepared to say that there may not be instances in which the immediate exclamations of bystanders, or remarks addressed to an actor in an occurrence, while it is pending, are admissible as part of the *res gestæ;* but the declarations in this case are not of a like character. See also *Lane* v. *Bryant,* 9 Gray, 245, 247, 69 Am. Dec. 282.

The case at bar is quite different from that of *Washington & G. R. Co.* v. *McLane,* 11 App. D. C. 220, where the declarations of the injured and dying child were made to his mother at the place of, and immediately after the receipt of, the injury. In such cases as that the rule of admission has been extended with very great liberality.

We do not regard the case of *Coll* v. *Easton Transit Co.* 180 Pa. 618, 37 Atl. 89, so strongly relied on, as in point. In that case, apparently, the plaintiff's husband, finding himself in a place of danger on a narrow path, and fearing that he would be crushed between the projecting side of the car and the guard rail, attempted to reach a place of safety by crossing the road, and in so doing tripped and fell across the track, and was run over. Dalton, a line man standing by the motorman, saw him fall, and sprang from the car and ran to assist him. The court said: "If Dalton saw the man when he fell, the motorman, who was standing on the same platform, and whose duty it was to look ahead, saw him, or should have seen him, when he was 80 feet away, and he should have attempted to stop the car at once. The car was running only half as fast as Dalton ran, and its speed was not checked until it had run 80 feet. Whether these inferences could properly be drawn was a question for the jury."

The declaration of Dalton, made immediately after the accident and before the man had been lifted from the tracks, to the effect that he had run ahead to pull him off the track, and did not have time to do it, was held to be competent evidence. The declaration of the motorman, made two minutes after the accident, to the effect that he did not stop the car because he thought that Dalton would have time to pull the man from the

track before the car reached him, was also held admissible. These declarations accompanied, were related to, and explanatory of the acts of the parties making them, and not of the acts of the injured person. Their actions were a part of the case from which the jury were to determine the negligence of the motorman, and not the contributory negligence, or recklessness, of the injured person. Having held that the jury might infer negligence of the motorman from the acts of Dalton and himself, the court was of the opinion that their declarations, explanatory of their own acts, were made so soon thereafter as to be admissible as part of the *res gestæ.* Had their declarations related to the acts of the injured man, a very different question would have been presented.

In this case, the plaintiff's brother would have been a competent witness to the facts observed by him. The fact that he died before trial furnishes no reason for admitting his declarations.

For want of time, we refrain from further discussion of the question, and refer to the opinion in *Metropolitan R. Co.* v. *Collins,* 1 App. D. C. 383, 390, where many cases are reviewed.

We are of the opinion that the court erred in permitting the introduction of the evidence, and that the case must be reversed therefor also.