## Commonwealth v. Bradowski.

*Criminal law—Abusing woman child—Declarations of child—Res gestæ.*

On the trial of an indictment charging an attempt to "abuse a woman child," where the fact that the child was ravished is established by other evidence, declarations of the child while under physical examination at her parent's home, to which she was taken, immediately after the commission of the crime, from the house in which it was committed, a few doors away, made while she was crying and screaming in terror, identifying the defendant as the perpetrator of the crime, are admissible as *res gestæ*, although the child herself is incompetent as a witness by reason of her tender years.

Rule for new trial. O. and T. Lackawanna Co., Oct. Sess., 1922, No. 35.

*H. A. Scragg*, District Attorney, for Commonwealth.

*A. A. Vosburg* and *J. J. Owens*, for defendant.

EDWARDS, P. J., Dec. 30, 1922.—Defendant was convicted on the third count in the indictment charging an attempt to commit the offence commonly known as abusing a woman child. The child abused was seven years of age, and the defendant was sixteen. The families of both parties lived within a few houses of each other on the same street. On the day the alleged assault was committed, the defendant's family were not at home. Defendant on that day called at the house of the child's parents and invited the child and her younger sister to come over with him to his house to hear a piano-player and to get some candy and sweet corn. The mother of the children consented to their going, warning them not to stay too long. The time was between three and four o'clock in the afternoon. The mother, anxious for the return of the children, and believing they were too long absent, went to look for the children in the defendant's home. As she approached the house she heard screams, or, as she described it, "hollering." Going into the house she went into the cellar basement, still hearing the screaming, and then went upstairs into a bedroom, where she found her little daughter crying and in the act of adjusting her bloomers, and calling out Jake, defendant's name, who was then in a closet or room close by. The child was immediately taken to her parents' home and was placed on a table and was examined by the parents and by a neighbor, and a little later by a doctor. The child was still crying and screaming. She said that Jake took her upstairs and put her on the bed and "had a bad trick with her," and said, "I am going to marry you; everybody has to do this." The examination made by the parents and by the neighbor showed blood on the child's person; and the testimony of Dr. Lonergan, which I need not repeat, was to the effect that the little girl had undoubtedly been ravished by somebody.

The foregoing statement is the substance of the Commonwealth's evidence. The defendant denied the charge. The testimony of the doctor who examined the child at about six o'clock in the evening of the same day, although called by the defendant, lent some corroboration to Dr. Lonergan's statement as to the physical condition of the child. In view of the testimony, the jury had no alternative but to find the defendant guilty on the second or third count in the indictment.

Notwithstanding the natural horror courts and jurors have against the crime of which defendant was convicted, especially where the child abused is of a very tender age, it remains to be stated that the defendant, in the due administration of justice, is entitled to all the protection accorded to him by the law. He is entitled to a fair trial and to the benefit of every reasonable doubt. He is clothed with the presumption of innocence, and he is entitled to

rulings on evidence and to a charge by the trial judge that are free from material error.

Defendant now asks for a new trial. The reasons assigned, although five in number, involve in substance the same question. It is claimed that error was committed in admitting the declarations made by the child as to the assault, particularly when the court declined to allow her to testify. When she was called to the stand, objection was made to her competency because of her tender age. The child was interrogated in a preliminary way by one of the attorneys and by the trial judge. After considering her answers, I was doubtful as to her competency to appreciate the nature of an oath, and I resolved the doubt in favor of the defendant. More than once, at other trials, I had allowed a child of seven to testify; but the children in those cases were unusually bright, and had intelligently answered the questions asked. In the present case, however, I concluded otherwise.

There is no foundation for the proposition that the declarations of the child, made soon after the assault, are incompetent because she was not allowed to testify at the trial. The reasons why the proposition is unsound are well stated by Judge Endlich in the case of Com. v. Bardino, 20 Dist. R. 473, in these words: "It is very evident that, properly stated, neither of them (certain rules) reaches a case in which the person outraged is not available as a witness by reason of death, absence from the jurisdiction, physical inability to take the stand, mental derangement or any incompetency to testify. In these situations there may be proof to a certainty that a rape was committed upon the person named in the indictment. There may be circumstances pointing to the accused as the guilty party with a degree of conclusiveness just falling short of the requirement that, in order to justify a conviction on circumstantial evidence, it must exclude every other rational explanation or hypothesis: Johnson v. Com., 115 Pa. 369; Com. v. Johnson, 162 Pa. 63; Com. v. Roddy, 184 Pa. 274; Com. v. Kovovic, 209 Pa. 465. And there may have been statements made by the victim under conditions which would cause them to be accepted by intelligent men, and under the law as turning the scale in any other connection. And yet, if they cannot be fully shown, an acquittal will be imperative. Nor should it be overlooked that just such situations are peculiarly likely to occur in prosecutions for rape, because of the injurious effects attending the outrage, because of the severity of the ordeal to which the woman is unavoidably subjected when a witness, because of the seclusion ordinarily sought for the commission of the crime, and because of the weakness or youth of the victims selected in its commission. In this view the possibility of miscarriages of justice assumes the character of a public danger, and its avoidance that of a legal necessity. The exclusion of the details of the complaint, except upon condition that the party making them be a witness, etc., cannot but put a premium upon the commission of the offence against those least able to protect themselves at the time and unable to take the stand afterwards to prove by their oaths what was done to them and who did it. If there were no principle in the law of evidence which could be invoked to admit their statements, these considerations would afford a valid reason for doing so by way of exception to the rules generally forbidding such proof."

The fact that the child in the present case was held to be incompetent to testify does not make the declarations made by her after the assault inadmissible, provided these declarations come fairly within the rule or doctrine of *res gestæ*. It is evident that the principal question to be considered in this case is the latter one.

3 D. & C.

The comparatively modern rule of res gestæ affords an interesting study to the jurist. It is difficult to find a hard and fast rule that will cover the application of the doctrine to every case. The principal requirement at all times is that there must be some main fact or facts proven in a case to which the declarations relied on as res gestæ fairly relate before such declarations are admissible. The definition of res gestæ, given in Wharton on Evidence, and quoted with approval in Coll v. Easton Transit Co., 180 Pa. 618, is as follows: "The res gestæ may, therefore, be defined as those circumstances which are the undesigned incidents of a particular litigated act and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist of speeches of any one concerned, whether participant or bystander; they may comprise things left undone, as well as things done. Their sole distinguishing feature is that they should be necessary incidents of the litigated act; necessary in this sense, that they are part of the immediate preparations for or emanations of such act, and are not promoted by the calculated policy of the actors." I am impressed with the following clear statement of the doctrine: "The difficulty of formulating a precise rule by which the admissibility of evidence under the doctrine of res gestæ shall be determined is admitted by all the authorities, but it may be stated generally that, wherever it becomes important to show upon the trial of a cause a particular fact or event, it is competent and proper also to show any accompanying facts and circumstances which are actually or substantially contemporaneous with it and calculated to elucidate and explain its quality and character, and so connected with it as to constitute one transaction; the rule including accompanying declarations, as well as acts, although such declarations would, apart from this doctrine, be excluded as hearsay."

As already stated, there must be a main fact or transaction in a case to which the declaration in the nature of res gestæ relates, and this main fact should itself be relevant and admissible. It is often stated that a declaration to be admitted under the res gestæ rule must be contemporaneous with the main fact in point of time; but, according to the great weight of authority, while the question of concurrence of time is important, declarations or acts in order to be contemporaneous are not required to be exactly coincident in point of time with the main fact. Statements subsequent to the main fact or facts, if made under the immediate influence of these facts or events, are admissible as a legitimate part of the events themselves. The principle underlying the admission of such evidence is that the declarations made so soon after the happening of the principal fact may be so intimately interwoven therewith by the surrounding circumstances as to raise a reasonable presumption that they are the spontaneous utterance of thought created by and springing out of the event itself and to exclude the presumption that they are the result of premeditation or design.

Applying the foregoing principles to the case at bar, the question is: What are the main facts disclosed by the evidence? They are several in number. First of all, it is proven quite conclusively that the seven-year old child had been the subject of a criminal assault. The most direct evidence on this point is that of Dr. Lonergan, supplemented by the testimony of the child's parents and a neighbor. Then there is the further circumstance that the defendant invited the victim and her younger sister to his home by promises of candy, etc. This fact in itself is of no moment, because of the friendly relations between the two families; but taken with the other facts of the case, it might have some bearing. Again, there is the fact that the child abused was found

Commonwealth *v.* Bradowski.

upstairs in a bedroom with her clothes disarranged and nobody in the house but the defendant, who was close by, and that the mother, who came to look for the children, heard screaming as she approached the house and found the older girl upstairs crying and screaming. The other important fact is that the little girl was taken home at once, placed upon a table and examined as stated, the doctor coming soon, and the child still crying and screaming. The time covering those occurrences was evidently very short. It was under such conditions that the declarations of the child were uttered connecting the defendant with the assault. It is difficult to avoid the conclusion that the utterances of the little girl were such as to come squarely within, the definitions of *res gestæ*. I know of no case in the books where, on the facts, the doctrine could be invoked so properly as in the case at bar.

Now, Dec. 30, 1922, the rule for a new trial is discharged and a new trial is refused.     From William A. Wilcox, Scranton, Pa.